U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 SEP 13 PM 3:51

CLERK

BY _____ H3C \_\_\_
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA

v.

JEREMY BROWN,
        Defendant.

Docket No. 2:24-cr-100-cr

## INFORMATION

The United States Attorney charges:

### General Allegations

1. At all times relevant to this Information, the defendant, JEREMY BROWN, resided in California.

2. In or around March 2019, JEREMY BROWN created the company Warrior Labz SARMs and the website warriorlabzsarms.com (the "Original SARMs Site"). From that time until in or about December 2023, JEREMY BROWN operated the Original SARMs Site from California and offered through it various drugs for sale.

3. In or about January 2023, JEREMY BROWN created the website warriorlabzvip.com (the "VIP SARMs Site"), which he made accessible to customers only via username and password. He operated the VIP SARMs Site from California, and offered through it various drugs for sale, until in or about December 2023.

4. The drugs sold by JEREMY BROWN through the Original SARMs Site and the VIP SARMs Site (together, the "SARMs Sites") included numerous Selective Androgen Receptor Modulators ("SARMs"). At all times relevant to the Information, SARMs comprised a class of

compounds with properties similar to those of anabolic steroids. The SARMs sold on the SARMs Sites included Ostarine and Ligandrol.

5. JEREMY BROWN also offered other drugs for sale through the SARMs Sites, including Viagra-Max Sildenafil, Cialis-Max Tadalafil, and semaglutide, which were unapproved versions of prescription drugs approved by the FDA.

6. The SARMs Sites included disclaimers that the drugs offered for sale were for "research purposes only" and "not for human consumption."

7. Despite these disclaimers, JEREMY BROWN knew and intended that the drugs sold by him through the SARMs Sites would be used by humans as drugs intended to affect the structure and/or function of the human body.

8. The drugs sold by JEREMY BROWN through the SARMs Sites were not approved by the Food and Drug Administration ("FDA") and were not generally recognized among qualified experts as safe and effective for use under the conditions prescribed, recommended, or suggested on the SARMs Sites or on any other labeling.

9. JEREMY BROWN obtained the bulk of the drugs he sold through the SARMs Sites from China. BROWN did not ask his Chinese suppliers about the shipping or storage conditions of the drugs he obtained from them, nor did he use a lab or other method to verify the contents of the drugs he received from China. The Original SARMs Site, however, included assertions that Warrior Labz SARMs used only the highest quality pharmaceutical grade ingredients and U.S. manufacturing practices. BROWN knew that these assertions were false. Labeling on the drugs BROWN sold through the SARMs Sites stated that the drugs were made in the United States. BROWN also knew that these claims was false.

10. On June 12, 2023, the FDA emailed a Warning Letter to JEREMY BROWN, advising him that the FDA had reviewed the Original SARMs Site and determined that products offered for sale on the site, including SARMs and various other drugs, were not approved by the FDA. The Warning Letter noted that, although these products were marketed on the site as for "research purposes only" and "not for human consumption," other evidence obtained from the site established that the products were intended for human use. The Warning Letter also explained that (1) the drugs were "new drugs" under the Food, Drug, and Cosmetic Act ("FDCA") in that they were not generally recognized as safe and effective for the uses listed on the site; (2) there were no approved applications to the FDA in effect for the drugs; and (3) therefore, interstate sale of the drugs was prohibited by the FDCA.

11. After receiving the Warning Letter, JEREMY BROWN revised the Original SARMs Site to remove certain drugs and statements regarding intended use. On June 26, 2023, JEREMY BROWN informed the FDA that he had corrected the violations cited in the Warning Letter.

12. After responding to the Warning Letter, JEREMY BROWN directed customers of the Original SARMs Site to purchase drugs through the VIP SARMs Site. JEREMY BROWN continued to sell, from the VIP SARMs Site, SARMs and other unapproved new drugs, with the same statements of intended use that had appeared on the Original SARMs Site before he received the Warning Letter. JEREMY BROWN also continued knowingly to falsely represent, elsewhere on the VIP SARMs Site, that the drugs were for "research purposes only" and "not for human consumption."

13. Between on or about August 4, 2023, and August 10, 2023, JEREMY BROWN sold unapproved new drugs to an undercover law enforcement account through the VIP SARMs

Site and shipped those drugs from California, where he resided and operated the SARMs Sites, to a P.O. box in Vermont. On August 4, 2023, the law enforcement account placed an order and paid for, among other things, the SARMs Ostarine and Ligandrol, and provided a shipping address in Vermont. Law enforcement retrieved the shipment from BROWN from the P.O. box in Vermont on August 10, 2023. FDA labs tested the substances received and found that neither contained any Ligandrol. Both bottles, one labeled as containing Ostarine and one labeled as containing Ligandrol, were found to contain Ostarine as well as a substance not included on the label – Clomiphene, an unapproved version of a prescription drug approved by the FDA to treat infertility by inducing ovulation.

14. From in or about March 2019 to in or about December 2023, JEREMY BROWN sold unapproved drugs with a value of at least $1,183,985.60 through the SARMs Sites.

### The Federal Food, Drug, and Cosmetic Act

At all times relevant to this Information:

15. The federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, regulated, among other things, the manufacture, labeling, and distribution of drugs.

16. Under the FDCA, the term "drug" included any article other than food intended to affect the structure or any function of the human body. 21 U.S.C. § 321(g)(1)(C).

17. Under the FDCA, a drug was a "new" drug if it was not generally recognized among qualified experts as safe and effective under the conditions of use prescribed, recommended, or suggested in the drug's labeling. 21 U.S.C. § 321(p).

18. The FDCA prohibited the introduction or delivery for introduction, or causing the introduction or delivery for introduction, into interstate commerce of any new drug that was not approved by the FDA. 21 U.S.C. §§ 331(d) & 355(a).

4

19. The FDCA designated as a felony any violation of 21 U.S.C. § 331 committed "with the intent to defraud or mislead." 21 U.S.C. § 333(a)(2).

## COUNT 1

20. Paragraph 1 through 19 are incorporated herein by reference.

21. Between on or about August 4, 2023, and on or about August 10, 2023, in the District of Vermont and elsewhere, the defendant, JEREMY BROWN, with the intent to defraud and mislead, introduced and caused to be introduced into interstate commerce new drugs that were not approved by the FDA in accordance with 21 U.S.C. § 355(a), by shipping Ostarine and Ligandrol from California to a P.O. box in the District of Vermont.

21 U.S.C. §§ 331(d), 333(a)(2), and 355(a)

## NOTICE OF FORFEITURE

1. The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture as described below.

2. Pursuant to 18 U.S.C. § 24(a)(2), a violation of 21 U.S.C. § 331 is a "Federal health care offense." As such, the allegation in Count 1 is a "Federal health care offense."

3. Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of a Federal health care offense, the defendant JEREMY BROWN shall be ordered to forfeit to the United States property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the Federal health care offense alleged in Count 1. The property to be forfeited includes, but is not limited to, the following:

 a. United States funds in the amount of the gross proceeds obtained as a result of the violation.

4. Pursuant to 21 U.S.C. § 334 and 28 U.S.C. § 2461(c), upon conviction of a violation of 21 U.S.C. § 331, the defendant JEREMY BROWN shall forfeit any and all misbranded drugs and unapproved new drugs that were introduced or delivered for introduction into interstate commerce contrary to the provisions of 21 U.S.C. § 331.

5. If any of the property described above, as result of any act or omission of the defendant:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third party;

 c. has been placed beyond the jurisdiction of this court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(18 U.S.C. § 982(a)(7); 18 U.S.C. § 24; 21 U.S.C. § 334; 28 U.S.C. § 2461(c))

*[signature]*

NIKOLAS P. KEREST (by CMS)
United States Attorney
Burlington, Vermont
September 13, 2024